**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alicia Klick, | No. CV-17-02018-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Claimant Alicia Jeanne Klick's appeal of the Social Security Administration's (SSA) decision to deny disability insurance benefits and supplemental security income. (Doc. 16). For the following reasons, the Court affirms the denial of benefits.

## BACKGROUND

Alicia Klick filed for disability benefits on April 2, 2013, alleging a disability onset date of May 16, 2011. Ms. Klick's application for SSA disability benefits asserts traumatic brain injury, chronic pain, and an eye and sleep diagnosis. (Tr. 125). Her claim was denied on November 20, 2013; reconsideration was denied on June 16, 2014. (Tr. 170–78; 184–91). Ms. Klick requested a hearing from an administrative law judge (ALJ), which was held on September 24, 2015. The ALJ determined that Ms. Klick had the following severe impairments: traumatic brain injury and hearing impairment. (Tr. 21). The ALJ found that Ms. Klick had the residual functional capacity (RFC) to perform a full range of work at all exertional levels. But, the ALJ assessed multiple non-exertional

| | |
|---|---|
| 1 | limitations, including: need for hearing aids, need to work in a quiet environment, |
| 2 | moderate limitations on the ability to remember and carry out detailed instructions, |
| 3 | moderate limitations on the ability to maintain attention and concentration, moderate |
| 4 | limitations on the ability to perform work at a consistent pace, moderate limitations on |
| 5 | the ability to interact with the general public and to get along with coworker, and other |
| 6 | similar limitations. (Tr. 24). The ALJ found that, even with these restrictions, Ms. Klick |
| 7 | could perform the work she had done in the past, namely working as a case manager or a |
| 8 | nanny. (Tr. 33). The ALJ also concluded that Ms. Klick could perform other work that |
| 9 | exists in significant numbers in the national economy. (Tr. 34). As such, the ALJ |
| 10 | determined that Ms. Klick was not disabled under the Social Security Act. *Id*. The |
| 11 | Appeals Council denied the request to review, making the Commissioner's decision final. |
| 12 | (Tr. 1–4). Ms. Klick now seeks judicial review of this decision pursuant to 42 U.S.C. |
| 13 | § 405(g). |

**DISCUSSION**

**I.     Legal Standard**

A reviewing federal court will address only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n. 13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits when that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id*. (quotation omitted). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*. (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). When evidence is "subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court

must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981, F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

**II.   Analysis**

Claimant alleges that the ALJ erred by (1) discounting the examining psychologist's opinion and (2) rejecting the Claimant's credibility and symptom testimony.

### A.   Evaluation of Medical Evidence

Claimant states that "[a]s an initial matter, Klick disagrees with the ALJ's assignment of weight to *all* medical opinions in this case . . . [h]owever, in the interest of streamlining Klick's complex constellation of medical issues and assessments, Klick focuses on the ALJ's error with regard to examining psychologist Brent Geary, Ph.D." (Doc. 16, p. 17). Claimant did list all the providers' whose opinions were discounted by the ALJ while detailing the medical evidence in the case. (Doc. 16, pp. 11–12). But that is not sufficient. Each of Claimant's contentions "must be supported by specific reference to the portion of the record relied upon and by citations to statutes, regulations, and cases supporting [Claimant's] position." L.R. Civ. 16.1(a)(4). Each of the providers' opinions were different in nature, length, and character, and the ALJ evaluated each independently. The Court and the Commissioner cannot do guesswork to determine how Claimant thinks the ALJ erred in evaluating multiple providers' opinions. *See Lewis*, 236 F.3d at 517 n. 13 (noting that courts will not address issues not raised by the Claimant on appeal). Therefore, the Court finds that Claimant has waived her arguments as to all providers who are not discussed with specificity.

Dr. Geary performed a consultative examination of Claimant on September 11, 2015. (Tr. 1417–27). Dr. Geary met with Claimant, observed her behavior, discussed her routine and habits, and reviewed some past psychological evaluations. Dr. Geary also administered a number of evaluations. Claimant scored a 30 out of 30 on the mini mental status exam. (Tr. 1418). Claimant was found to have a full scale IQ of 85. (Tr. 1421).

Dr. Geary further opined that Claimant's score was "decreased significantly by the low Working Memory and Processing Speed Indexes. . . . [and] [i]t appears likely that Alicia's true intellectual abilities are represented by the Verbal Comprehension [96] and Perceptual Reasoning [96] Indexes, both in the average range." *Id*. Dr. Geary also assessed Claimant's memory, finding that she was "at the top of the low average range" but that she had "significant weakness in long-term memorial functioning." *Id*. Claimant scored a 26 out of 30 on the Logical Memory Recognition items, 34 out of 40 on the Verbal Paired Associates Recognition, 5 out of 7 on Visual Reproduction Recognition, and 20 out of 20 on Designs Recognition. (Tr. 1421–22). Dr. Geary stated that these "values are well within normal limits." (Tr. 1422). On the Trail Making Test, Dr. Geary noted that both of Claimant's "performances far exceed normal limits." *Id*. On the Rey Test, Claimant's performance resulted in a "normal range finding." *Id*. Claimant did not believe she was affected by depression. *Id*. And a personality inventory resulted in "a valid profile" and Claimant "seemingly responded to inventory items in an open and reasonable manner." *Id*. Dr. Geary then opined that Claimant meets the criteria for Listing Impairments 12.02 and 12.06 and that the "psychological prognosis in this case is poor." (Tr. 1423).

The ALJ gave Dr. Geary's opinion minimal weight. (Tr. 28). The ALJ noted that Dr. Geary's opinion contained inconsistencies: many of the tests Dr. Geary administered resulted in normal findings, but Dr. Geary also opined that Claimant met two Listing Impairments. *Id*. The ALJ also noted that some of Dr. Geary's statements about Claimant's disability were opinions on issues reserved to the Commissioner. *Id*. Claimant asserts that the ALJ erred in assigning only minimal weight to Dr. Geary's report. First, Claimant argues that the ALJ's finding that Dr. Geary's examination was largely normal is contradicted by some of Dr. Geary's findings that Claimant had limitations. Dr. Geary's report contained both findings of normal testing and some limitations. Internal inconsistencies in physician's reports constitute relevant evidence, and the ALJ has the responsibility to determine whether inconsistencies are material and are relevant.

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). The ALJ did not err in evaluating the inconsistencies in Dr. Geary's report and finding them relevant. Second, the Claimant argues that the ALJ erred by failing to specify what objective evidence he believed was inconsistent with Dr. Geary's report. But, in evaluating Dr. Geary's report, the ALJ made specific reference to all of Dr. Geary's findings that Claimant fell within normal to average ranges. The ALJ discussed the lack of objective evidence in Dr. Geary's report.

Finally, Claimant objects to the ALJ's dismissal of Dr. Geary's opinion because Dr. Geary commented on issues reserved to the Commissioner. The ALJ, however, never stated that he rejected all of Dr. Geary's findings because some statements throughout were on issues reserved to the Commissioner. The ALJ did not err in rejecting Dr. Geary's opinions about Claimant's disability and inability to work. 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

Claimant further asserts that the ALJ erred by assigning great weight to the state agency reviewer's evaluations. (Tr. 82–101, 102–22, 125–44, 145–65). Claimant argues that because the reviews were completed in 2014, and the ALJ's hearing and opinion were not until 2015–2016, the reviewer's opinions were not relevant. Claimant does not explain how this timing lessens the validity of the reviewer's opinions of the medical evidence in the record. Where "it is an *examining* physician's opinion that the ALJ has rejected in reliance on the testimony of a nonexamining advisor, reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews*, 53 F.3d at 1041. Claimant also states that the ALJ erred by not providing citation to the record to support the conclusion that the reviewing doctors' opinions are consistent with the totality of the evidence. (Tr. 27). While Claimant is correct that the

ALJ does not provide a citation immediately after making such a statement, the ALJ's whole opinion contains numerous citations to medical testing and evaluations throughout the record. The ALJ discusses the lack of physical evidence in brain scans (Tr. 25), the Claimant's normal psychological examinations (Tr. 26), and the Claimant's activities of daily living (Tr. 22). Even if the ALJ did err, it was harmless because the ALJ had extensively discussed such objective evidence in other parts of the opinion. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

### B. Claimant's Credibility

When a claimant alleges subjective symptoms, like pain, the ALJ must follow a two-step analysis to decide whether to credit the claimant's testimony. First, the claimant "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)) (quotation marks omitted). The claimant does not need to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282. Second, if the claimant can make the showing required in the first step and the ALJ does not find any evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1281. The ALJ must "specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan*, 169 F.3d at 599.

The ALJ found that Claimant's impairments could reasonably be expected to cause her alleged symptoms and the ALJ did not find that Claimant was malingering. But, the ALJ did determine that Claimant's statements about the intensity and persistence of her symptoms were not entirely credible. (Tr. 25). The ALJ found that (1) the Claimant's allegations of learning disabilities were not supported by medical records; (2) the Claimant's allegations of chronic pain were not supported by medical records; (3)

there was no evidence of worsening of the Claimant's condition over the years since her initial brain injury; (4) the Claimant's psychological examinations did not result in a clinically significant or borderline evaluation; (5) the Claimant has failed to follow through with treatment plans; (6) the Claimant had no auditory difficulties at the hearing; and (7) the Claimant had a sporadic work history.

Initially, Claimant argues that the ALJ cannot discount the Claimant's credibility regarding the severity of her symptoms by relying on a lack of objective medical evidence. However, "[a]lthough lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ did not rely solely on a lack of medical evidence, but considered it with other factors. The ALJ did not err in considering conflicts between the Claimant's testimony and the medical record.

Next, Claimant objects to the medical evidence on which the ALJ relies to discount her testimony. In discussing Claimant's complaints of chronic pain and migraines, the ALJ noted that a physical examination had revealed normal sensations to touch, pain, position, and vibration. (Tr. 25). Claimant argues that this one piece of evidence is not particularly relevant to Claimant's stated symptoms. But, normal findings on examinations related to pain are relevant, and it was just one piece of evidence considered by the ALJ. Claimant also criticizes the ALJ's statement that there was no worsening of the Claimant's symptoms between 1996 and 2012 (and Claimant's accident occurred in 1998). *Id*. The ALJ relied on a mental health treatment history taken by a provider in 2012. (Tr. 443). Claimant is correct that the record does not explicitly state that there was no worsening of the Claimant's symptoms between 1996 and 2012. Yet, ALJs may make findings "supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1993. The mental health history referred to by the ALJ notes that Claimant saw providers for outpatient counseling on and off, and primarily focused on "family dynamics, self-awareness, and coping skills." (Tr. 443). As noted by the ALJ,

there is no discussion of emergent mental health difficulties or episodes of serious concern. The ALJ could permissibly draw the conclusion that because the mental health history contained no discussion of worsening conditions or serious episodes, none had in fact occurred. The ALJ made a similar statement while discussing the Claimant's history of mental impairments and testing, noting that the Claimant has shown some impairments since the traumatic brain injury in 1998 but there have been no findings of the impairment worsening in recent years such that the Claimant would now be disabled. (Tr. 26).

In 2012, a provider recounted the testing done on Claimant four months after her traumatic brain injury. (Tr. 414). That testing revealed that Claimant had below average cognitive functioning, impaired attention, lowered frustration tolerance, and an IQ of 88. *Id.* Her more recent tests had assessed some memory difficulties and an IQ of 85. (Tr. 26). The ALJ compared the tests done in 1998 to the ones done in 2012, and determined that the Claimant's functioning had not markedly changed or worsened. These considerations are relevant because the primary injury to Claimant occurred in 1998, and yet Claimant worked for periods after the accident and did not apply for disability until 2012. If Claimant's symptoms did not worsen over the years and Claimant was also able to work over the years, then the ALJ could consider those facts in determining whether to accept the Claimant's testimony regarding the extent of her symptoms and her assertion that she was not presently able to work. Claimant also cites to some providers' assessments that her impairments were now "severe" rather than "moderate." As detailed by the ALJ, however, other testing revealed moderate impairments and average scores. The ALJ is responsible for resolving such conflicts in the record.

Claimant asserts that the ALJ made contradictory statements in evaluating her mental health testing. The ALJ noted that Claimant had over twenty clinical tests administered and that most resulted in no significant clinical findings or borderline scale evaluations. (Tr. 26). The ALJ also stated that testing revealed that Claimant had a borderline evaluation on the schizoid and masochistic scale, and was in the borderline

range for immediate recall and long-term memory. *Id*. While these statements do appear contradictory, they mirror the provider's statements. The provider stated that "the patient's responses did not result in any clinically significant or borderline scale elevations . . . [h]owever, she did exhibit a borderline elevation on the Schizoid [ ] scale and the Masochistic (Self-Defeating) scale." (Tr. 1100). The ALJ is responsible for evaluating the record and reconciling conflicts. The ALJ's contradictory statements merely mirror the contradictory statements of the provider themselves. The ALJ went on to consider multiple other clinical findings. The ALJ did not err.

Claimant argues that the ALJ erred in finding and considering that Claimant failed to follow through with treatment plans. ALJs may consider and rely on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ found that Claimant had not obtained counseling since 2012 and that the record contained evidence of providers' unsuccessful attempts to contact her to schedule services leading to eventual termination and discharge from programs. (Tr. 26). Claimant objects that the ALJ was mistaken in stating that no treatment had occurred since 2012. Claimant notes that she attended counseling from May 2013 to July 2013 and October 2014 to January 2015. The record contains notes from Dr. Sanford Silverman, a licensed psychologist, covering the period of May to July 2013. (Tr. 543–51). However, the handwritten notes are illegible, making it difficult for the Court to evaluate what treatment occurred. And, the record also contains emails from Claimant to Dr. Silverman cancelling appointments. (Tr. 551, 554). From October 2014 to January 2015, Claimant saw providers at Lifewell Behavioral. (Tr. 873–920). Claimant did attend multiple sessions with providers there. But, the record also contains evidence of providers having difficulty contacting Claimant and reporting that Claimant did not attend scheduled sessions. (Tr. 888, 889, 900, 909). As cited in the ALJ's opinion, there are other instances of Claimant failing to attend scheduled treatments. (Tr. 849, 930, 1347). Thus, although the ALJ was incorrect in stating that Claimant had no counseling since 2012, the ALJ was not incorrect in finding that Claimant had been terminated from

multiple treatment programs. Even the evidence Claimant cites to support her attending counseling contains significant instances of cancelling treatments. Any error made by the ALJ in using the incorrect date of 2012 is therefore harmless. *Burch*, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless."). Claimant also objects that the ALJ failed to inquire as to the reason for the missed appointments and gaps in treatment. The burden of proving disability rests with Claimant. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) ("The claimant has the burden of proof for steps one through four."). The ALJ held a fair hearing, and Claimant did not present evidence or testimony to explain her gaps in treatment.

Finally, Claimant objects to the ALJ's consideration of her sporadic work history. The ALJ stated that Claimant "worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments." (Tr. 27). Claimant argues that an ALJ may only consider inconsistent work records in conjunction with other factors that discredit a claimant's credibility. But, the ALJ did discuss multiple other reasons for discounting Claimant's credibility, and the ALJ was permitted to consider the Claimant's work history as one of those factors. *Thomas*, 278 F.3d at 959 (considering a claimant's "extremely poor work history," "little propensity to work in her lifetime," and "spotty [work history], at best, with years of unemployment between jobs" in evaluating the claimant's credibility). The ALJ provided clear and convincing reasons for rejecting Claimant's pain testimony and there is substantial evidence to support his determination.

## CONCLUSION

The ALJ did not err by discounting the consultative examiner's opinion. The ALJ properly considered the internal inconsistencies in the report. The ALJ did not err by discounting the Claimant's testimony. The ALJ evaluated the Claimant's medical evidence, along with her inconsistent treatment history and work history.

/ / /

/ / /

1 **IT IS THEREFORE ORDERED** that the ALJ's decision is affirmed. The Clerk of Court is directed to enter judgment accordingly.

Dated this 20th day of July, 2018.

*G. Murray Snow*
Honorable G. Murray Snow
United States District Judge